**Rochell FLOWERS, an individual on behalf of herself and all others similarly situated, Plaintiff,**

v.

**EZPAWN OKLAHOMA, INC., a Delaware corporation and EZCorp, Inc., a Delaware corporation, Defendants.**

**No. 03–CV–359–K(C).**

United States District Court,
N.D. Oklahoma.

Feb. 3, 2004.

pel Arbitration (# 27). Upon review of the record, the Court concludes the Report should be affirmed in all respects. All dispositive issues have been accorded a *de novo* review in compliance with FED. R. CIV. P.72 (b).[1]

### Discussion

The Court will not revisit all of the issues found in the Magistrate's Report. However, some issues objected to by Defendants merit brief but additional discussion.

### A. Diversity Jurisdiction

█ In their Objection, Defendants state that they "set forth that the Response [to Plaintiff's Motion to Remand] ("Response"), be deemed as an amendment to [the] Notice of Removal." Defs.' Obj. at 2, n. 1. Included in the Response is a "breakdown of costs," which provides information regarding the cost of injunctive relief to Defendants. Defendants seem to find fault with the fact that the Magistrate did not consider the "breakdown of costs" when determining whether the injunctive relief met the jurisdictional requirement for diversity jurisdiction. *See* Magistrate's Order at 9 ("The undersigned has not considered this belated 'economic analysis' as it is not in the removal notice or submitted by way of attachment affidavit thereto."). The Court agrees with the Magistrate's conclusion that even if the "breakdown of costs" was considered, diversity jurisdiction would not exist. *See* Magistrate's Order at 9–10 (discussion regarding the relationship of *Justice v. Atchison, Topeka & Santa Fe. Ry. Co.*, 927 F.2d 503 (10th Cir.1991) and the nonaggregation rule in *Zahn v. International Paper Co.*, 414 U.S. 291, 300–02, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) and *Snyder v. Harris,*

David Humphreys and Luke J. Wallace, The Law Office of HumphreysWallace-Humphreys, P.C. Tulsa, OK, for Plaintiff.

David Cheek and Robert Norman, McKinney & Stringer, P.C., Oklahoma City, OK, for Defendants.

### ORDER

KERN, District Judge.

Before the Court is Defendants' Objection to the Magistrate's Recommendation on Motion to Remand and Motion to Com-

---

1. The Tenth Circuit has held a remand order is a "final decision or dispositive action."

*First Union Mortg. Corp. v. Smith,* 229 F.3d 992, 996 (10th Cir.2000).

394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). Thus, insomuch as Defendants' statement regarding the relationship of their Response and their Notice of Removal represented a request to amend their Notice of Removal with the "breakdown of costs," such a request is denied.[2]

█ Defendants also argue the Magistrate erred in concluding the requisite amount in controversy does not exist regarding money damages. Specifically, Defendants maintain that if the parties are diverse and the putative class representative has an individual claim in which the amount in controversy exceeds $75,000, diversity jurisdiction would be established over the entire class. The Tenth Circuit has held *each individual plaintiff* in a class action diversity case must meet the $75,000 requirement, however. *Leonhardt v. W. Sugar Co.*, 160 F.3d 631, 639 (10th Cir.1998) (emphasis added); *see Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir. 2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214 (3d. Cir.1999). However, the Court does note the circuit split regarding this issue. *See Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 114 (4th Cir. 2001) (holding that if there is complete diversity and a sufficient amount in controversy for the named plaintiff, there is diversity jurisdiction over the class action); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 937 (9th Cir.2001) (same); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir.1997) (same); *In re Abbott Labs.*, 51 F.3d 524, 529 (5th Cir. 1995), *aff'd by an equally divided court sub nom. Free v. Abbott Labs.*, 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000) (per curiam) (same). Because the Supreme Court affirmed *Abbott* without opin-

ion by an equally divided vote, Defendants argue that *Leonhardt* is no longer valid. *See Free v. Abbott Labs.*, 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000) (per curiam) (4–4 vote). However, "an affirmance by an equally divided Court is not entitled to precedential weight." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 n. 7, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). This Court is thus bound by *Leonhardt*, and concludes that each individual plaintiff in a class action diversity case must meet the $75,000 requirement. *See Leonhardt*, 160 F.3d at 639. Because Defendants have not established that each class member can meet the jurisdictional amount, the Court agrees with the Magistrate's finding that diversity jurisdiction has not been established.

## B. Federal Question Jurisdiction

In Defendants' Objection to the Magistrate's Recommendation, Defendants argue that *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) and *Krispin v. May Department Stores*, 218 F.3d 919 (8th Cir. 2000) are dispositive of removal. Specifically, Defendants argue that "[i]n reaching its conclusion, the Court in *Beneficial* expressly adopted the complete preemption approach applied in *Krispin* .... [where] the Eighth Circuit held that a non-bank defendant could remove a state law usury case to federal court, even though the bank was not a party, and the plaintiff alleged that the non-bank defendant was the one who extended the credit at issue." Defs.' Obj. at 4. The Court agrees with the Magistrate's finding that Defendants' reliance on *Beneficial* and *Krispin* is misplaced. *See* Magistrate's Order at 12–18.

---

**2.** The Court also notes the removing Defendant bears the burden of establishing federal court jurisdiction at the time of removal, and

not by supplemental submission. *See Laughlin*, 50 F.3d at 873.

The Court also notes that Defendants' characterization of *Beneficial* in their Objection is misleading. Contrary to Defendants' assertion, the Supreme Court did not expressly adopt *Krispin* in *Beneficial.* In fact, *Krispin* is cited only once in *Beneficial,* and this citation is in no way related to a non-bank defendant's ability to remove a state law usury case to federal court. *See Beneficial,* 123 S.Ct. at 2061.[3] As stated by the Magistrate, the bank involved in *Beneficial* was a named defendant and "the question of the National Bank Act's complete pre-emption of state claims against the national bank was squarely at issue from the face of the complaint." Magistrate's Order at 17. The Supreme Court's holding in *Beneficial* was in no way related to the portion of *Krispin* dealing with a non-bank defendant. Rather, the "dispositive question in [the] case [was][d]oes the National Bank Act provide the exclusive cause of action for usury claims *against national banks?*" *Beneficial,* 123 S.Ct. at 2063 (emphasis added). Thus, contrary Defendants' statement, *Beneficial* does not "expressly [adopt] the complete preemption approach applied in *Krispin* " relating to non-bank defendants. Defs.' Obj. at 4.

**3.** Instead, the sole reference to *Krispin* related to whether the National Bank Act provides the exclusive cause of action for usury claims *against national banks.* As found in *Beneficial:*

> The [Eleventh Circuit] held that under our "well-pleaded complaint" rule, removal is generally *not permitted* unless the complaint expressly alleges a federal claim and that the narrow exception from that rule known as the "complete preemption doctrine" did not apply because it could "find no clear congressional intent to permit removal under §§ 85 and 86." *Id.,* at 2058. Because this holding conflicted with an Eighth Circuit decision, *Krispin v. May Dept. Stores Co.,* 218 F.3d 919 (2000), we granted certiorari.

 Defendants also argue the Magistrate's reliance on *Colorado, ex rel. Ken Salazar v. Ace Cash Express, Inc.,* 188 F.Supp.2d 1282 (D.Colo.2002) is faulty. Despite Defendants' objections, the Court agrees with the Magistrate's reliance on *Salazar. Salazar* is the only Tenth Circuit authority found by the Court which addresses *Krispin* and whether a usury claim against a non-bank defendant is completely preempted by the National Bank Act. The *Salazar* court stated, "*Krispin* determined that the case invoked federal jurisdiction under the National Bank Act because the store and the national bank at issue were related based on an 'assignment shifting of contractual rights and duties to another' because the national bank was a wholly-owned subsidiary of the store." *Salazar,* 188 F.Supp.2d at 1284-85 (citing *Krispin,* 218 F.3d at 923). The court distinguished *Krispin* from the facts before it, because the defendant and the national bank in *Salazar* were separate entities that did not have same relationship as the parties in *Krispin.* The *Salazar* court "agree[d] with [p]laintiff's argument that ... the [c]omplaint strictly [was] about a non-bank's violations of *state* law and ... alleges *no* claims against a *national bank* under the *National Bank Act.*" *Salazar,* 188 F.Supp.2d at 1285.[4] Similarly, the

*Beneficial,* 123 S.Ct. at 2061.

**4.** Again, the Court notes that Defendants present a misleading portrayal of case law in their Objection. Defendants argue "[t]he Magistrate quoted the portion of *Salazar* which states that the plaintiff in that case 'alleges no claims against a national bank under the NBA,' ... but this quote is out of context. The court in *Salazar* was quoting the plaintiff's own argument [as opposed to the court's finding]." Defs'. Obj. at 6. While the court in *Salazar* was indeed quoting plaintiff's argument, the court also stated that it "agree[d] with Plaintiffs' argument," a fact that Defendants omitted in their description of this quotation in their Objection. *Salazar,* 188 F.Supp.2d at 1285.

Magistrate correctly found Plaintiff's petition only asserted claims against EZPawn and EZCorp, which are separate entities from County Bank.[5] *See* Magistrate's Order at 15–18.

### *Conclusion*

It is the Order of the Court that the Report and Recommendation (#26) is hereby affirmed and adopted. Defendants' Objection to Magistrate's Recommendation on Motion to Remand and Motion to Compel Arbitration (#27) is DENIED, Plaintiff's Motion to Remand (#8) is GRANTED and Defendants' Motion to Compel Arbitration (#3) and Defendants' Motion to Continue and/or Strike the February 4, 2004 Pretrial Conference (#30) are deemed MOOT. This case is hereby remanded to the District Court of Tulsa County for further proceedings pursuant to 28 U.S.C. § 1447(c).

CLEARY, United States Magistrate Judge.

### ORDER

This class action lawsuit was originally filed in Tulsa County district court by Plaintiff Rochell Flowers ("Flowers"), on behalf of herself and the putative class, and removed by defendants, EZPawn Oklahoma, Inc.("EZPawn") and EZCorp, Inc. ("EZCorp"), to this Court. Flowers, as class representative, brings claims of violation of the Oklahoma Consumer Credit Code ("OCCC"), 14A O.S. § 1–101 *et*

*seq.*, usury and fraud against defendants. *Petition* ¶¶ 26–40. Flowers alleges defendants acted willfully or in reckless disregard by entering into a "sham" relationship with County Bank of Rehoboth Beach, Delaware ("County Bank"), a state-chartered, federally insured bank, for the purpose of claiming federal preemption and evading state usury, fraud and consumer protection laws. *Petition* ¶¶ 11–14, 26–42. Defendants charged interest rates in excess of 505.38% on "payday loans" to plaintiff class, loan transactions "whereby the lender agrees to cash the borrower's check with the understanding that the check will be delayed for presentment for a specified period." *Petition* ¶ 9. In the case of Flowers, she received a cash advance of $350 in exchange for defendants' delayed presentment of the loan for fourteen days and a $63.00 finance charge. *Petition* ¶ 10. Flowers contends the interest and terms of these payday loans to her and members of the putative class violate Oklahoma statutory and common law usury prohibitions and seeks actual and punitive damages, penalties under the OCCC, attorney fees and declaratory and injunctive relief.

Defendants assert that they acted as servicers for the loan made by County Bank, a Delaware-chartered, federally insured bank. And, as County Bank is the lender, federal banking law and not Oklahoma law governs the legality of interest rates. Defendants contend that nothing in

---

**5.** Defendants also request leave to amend the Notice of Removal to plead additional facts or attach additional evidentiary documents. *See* Defs.' Obj. at 10. A court has discretion to permit a defendant leave to amend its notice of removal. *See CBS, Inc., v. Snyder,* 762 F.Supp. 71, 73 (S.D.N.Y.1991). The Court declines to exercise such discretion in the instant case, however. As stated above, the Court agrees with the Magistrate's analysis of *Beneficial, Krispin,* and *Salazar* and fails to

find that these cases mandate removal. Amendment of Defendant's notice of removal is unlikely to change this conclusion. Further, allowing amendment at this time would prejudice Plaintiff as Defendant's motion for removal has been fully briefed and decided by the Magistrate. *See LeNeave v. N. American Life Assur. Co.* 632 F.Supp. 1453, 1456 (D.Minn.1986) (considering whether permitting defendant to amend its notice of removal would prejudice plaintiff).

the loan agreement with plaintiff or those "similarly situated" is fraudulent or illegal. Defendants also deny that plaintiff is entitled to class certification.

Before the undersigned for Report and Recommendation are Plaintiff's Motion to Remand (Dkt.# 8) and Defendants' Motion to Compel Arbitration (Dkt.# 5).[1] As the Court must determine whether it has subject matter jurisdiction as a threshold matter, the undersigned first addresses plaintiff's motion to remand.

## I. Motion to Remand

 Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States ...." 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of federal jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974). Removal statutes, therefore, are strictly construed and any doubt resolved in favor of remand. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289–90 (10th Cir.2001); *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir.1982). The burden is on the party requesting removal to establish that the Court has jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.1995), *cert. denied*, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995).

As grounds for removal, defendants rely on both diversity and federal question jurisdiction. 28 U.S.C. §§ 1331 and 1332. Specifically, defendants contend that diversity jurisdiction exists because the amount in controversy exceeds $75,000, though not pled in the Petition. Defendants also argue there is federal question jurisdiction as plaintiff's state claims are completely preempted by Section 27 of the Depository Institutions Deregulation and Monetary Control Act ("DIDA"), 12 U.S.C. § 1831d, which provides the exclusive remedy for borrowers who have allegedly been overcharged in loan transactions with state-chartered, federally insured banks, such as County Bank.

### A. Diversity Jurisdiction

 The parties agree there is diversity of citizenship between Flowers and defendants.[2] Flowers, however, contends the case should be remanded to the Tulsa County district court as the requisite jurisdictional amount is not met.

Courts apply different standards of review in determining diversity upon removal:

> One standard requires the defendant to show to "a legal certainty" that the amount in controversy actually exceeds $75,000. Another standard found in some opinions, including a number of recent ones, demands that the defendant prove "by a preponderance of evidence" that the amount involved in the litigation exceeds the statutory jurisdictional threshold. A third standard requires defendant to show "some reasonable probability" that the damages will ex-

---

1. Plaintiff filed supplements to the briefing on the motion to remand (Dkt.# 23) and the motion to compel arbitration (Dkt.# 23). Defendants move to strike these supplements pursuant to Local Rule 7.1 and 7.2. As plaintiff did not seek leave to file the supplements, the undersigned GRANTS the motion to strike. (Dkt.# 25).

2. In class action suits, only named class representatives are considered in determining diversity of citizenship with defendant(s). *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 637 n. 3 (10th Cir.1998).

ceed $75,000. The most lenient burden, which could be called the inverted ... legal certainty test, and therefore the one most parallel to that used in original jurisdiction cases, requires the defendant merely to show that it does *not* appear to a legal certainty that the amount in controversy falls below the applicable jurisdictional amount. Finally, some federal courts look at the facts of the case and make a decision on the question whether the jurisdictional amount has been satisfied without enunciating any particular standard at all. Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3275 (3d ed.1998) at 89–93 (footnotes omitted). Although the Tenth Circuit has not expressly adopted a standard, it has stated that at a minimum, defendants on removal have to prove the jurisdictional amount by a "preponderance of the evidence." *Martin,* 251 F.3d at 1290. Because the undersigned finds defendants have not proved the amount in controversy by a preponderance of the evidence, the undersigned need not address whether a greater burden of proof has been met.

For purposes of diversity jurisdiction, the amount in controversy "must be affirmatively established on the face of either the petition or the removal notice." *Laughlin,* 50 F.3d at 873.. "The burden is on the party requesting removal to set forth, in the notice of removal itself, the '*underlying facts* supporting [the] assertion that the amount in controversy exceeds [$75,000].' " *Id.* (quoting *Gaus v. Miles,* 980 F.2d 564, 567 (9th Cir.1992)) (emphasis in original). When the amount in controversy is not clearly specified in the petition, the "court must examine the facts existing at the time of removal and determine whether those facts prove to 'a reasonable probability'—*i.e.,* that it is more likely than not—that the jurisdictional amount was met." *Hanna v. Miller,* 163 F.Supp.2d 1302, 1305–06

(D.N.M.2001)(applying the preponderance of evidence standard).

 Plaintiff, as class representative, does not allege a specific amount in controversy in the petition. Rather, she seeks to recover "actual damages in excess of $10,000," "punitive damages in excess of $10,000," penalties under the OCCC, attorney's fees and declaratory and injunctive relief based on defendants' willful, reckless and fraudulent scheme to charge usurious interest rates for payday loans. *Petition,* ¶¶ 1–13, 26–42 (Dkt.# 1). When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied. *Bell v. Preferred Life Assur. Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). Similarly, the Court may consider either the cost or value of the injunctive relief sought. *Justice v. Atchison, Topeka & Santa Fe Ry. Co.,* 927 F.2d 503, 505 (10th Cir.1991). ("[T]he vast majority of courts have measured the amount in controversy in injunction cases by looking at either the cost to the defendant or the value to the plaintiff.")

In their notice of removal, Defendants assert that the jurisdictional amount is met here because plaintiff seeks compensatory and punitive damages based on defendants' willful, reckless and fraudulent conspiracy to create sham loan transactions with County Bank to collect usurious interest rates on payday loans and "these allegations clearly place the Plaintiff's demand for damages within the scope of Oklahoma's punitive damages statute, 23 O.S. § 9.1," which permits damage awards up to $500,000. Defendants also note that "counsel for the Plaintiff in this case have received numerous judgments and settlements in excess of $75,000 in individual consumer law and other types of cases," citing awards in five cases ranging from

$85,000 to $3 million. Finally, defendants state that plaintiff's injunctive relief would compel defendants to shut down the County Bank loan product which would cost defendants in excess of $75,000.

What defendants overlook in their diversity analysis is that this is a class action.[3] When a defendant seeks removal of a diversity class action in which plaintiffs' claims are separate and distinct, the defendant must show that each class member's claim exceeds the jurisdictional amount. The Supreme Court has consistently interpreted "matter in controversy" in 28 U.S.C. § 1332 to prohibit the aggregation of damages of each class member in determining jurisdictional amount. *See Zahn v. International Paper Co.*, 414 U.S. 291, 300–02, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Aggregation of damages for jurisdictional purposes is permitted only when "a single plaintiff seeks to aggregate ... his own claims against a single defendant," or when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335, 89 S.Ct. 1053; *Leonhardt v. Western Sugar Co.*, 160 F.3d 631, 641 (10th Cir.1998)(The enactment of supplemental jurisdiction under 28 U.S.C. § 1367 did not alter the Supreme Court's interpretation of "matter in controversy" as requiring each plaintiff in a class action to individually meet the jurisdictional requirement.).

A class has a "common and undivided interest" when the "claims of the putative class members derive from rights which they hold in group status." *Amundson & Assoc. Art Studio, Ltd. v. Nat'l Council on Compensation Ins., Inc.*, 977 F.Supp. 1116, 1124 (D.Kan.1997).[4] Aggregation of damages is prohibited where "each class member claims an individual injury, such as a unique amount, that in theory must be proved separately." *Id.* Further, when "[e]ach class member could sue separately for punitive damages and have his right to recovery determined without implicating the rights of every other person claiming such damages ... the class claim for such damages does not seek to enforce a single right in which the class has a common and undivided interest." *Martin*, 251 F.3d at 1292–93.

Although the petition alleges that the putative class members in this case are victims of the same illegal scheme, each member entered into a separate transaction with defendants. Each member sustained an individual injury and could sue separately for compensatory and punitive damages, as well as declaratory and injunctive relief. Therefore, each class member, and not just Flowers as class representative, must independently meet the jurisdictional amount for the Court to

---

**3.** In determining diversity jurisdiction, a putative class is treated as if the class were already certified. *Smith v. GTE Corp.*, 236 F.3d 1292, 1304 n. 12 (11th Cir.2001)(citing 3B J. Moore, *Moore's Federal Practice*, ¶ 23,50 (2d ed. 1985)) ("In the interim between the commencement of the suit as a class action and the court's determination as to whether it may be so maintained it should be treated as a class suit.").

**4.** The Tenth Circuit in *Martin* cited the following examples of claims that can be aggregated:

"As one court expressed the principle, the 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.' " *Martin*, 251 F.3d at 1292 (quoting *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1423 (2d Cir.1997)).

exercise jurisdiction over his or her claim. *Leonhardt,* 160 F.3d at 641.

The petition alleges that a class action is necessary as the amount of damages suffered by each individual class member is small (loans of no more than $500), and equal to double the amount of unlawful finance charges paid on the payday loans as well as punitive damages under 23 O.S. § 9.1 *Petition* ¶¶ 23, 28. The petition identifies the putative class as "all persons to whom Defendants lent money or extended a payday loan" in connection with County Bank in violation of Oklahoma usury and consumer protections laws within the class period beginning March 7, 2002. *Petition* ¶ 14. In the case of Flowers, the petition alleges that she paid $63.00 in finance charges for a cash advance of $350.00. *Petition* ¶ 10.

■ The undersigned finds that defendants have not established that it is more likely than not that the jurisdictional amount is met as to each class member, including Flowers as class representative. Although the petition alleges intentional fraudulent misconduct which would implicate the Oklahoma punitive damages statute and thereby allow damages up to $500,000 for conduct which is intentional and with malice, any punitive damages award must be divided *pro rata* among the class members.[5] *Martin,* 251 F.3d at 1292–93. The petition does not support and defendants have not established that each class member would recover damages exceeding $75,000, especially given the small amount of compensatory damages. Defendants' statement that "[p]unitive damage awards in Oklahoma can be extremely large, even in individual cases where compensatory damages are relatively small" as well as their listing of verdicts in unrelated cases litigated by plaintiff's counsel do not meet defendants' burden to show *underlying facts* supporting the jurisdictional amount for Flowers or other members of the class. *Laughlin,* 50 F.3d at 873.

Neither is defendants' conclusory statement in the notice of removal that the costs of injunctive relief would exceed $75,000 sufficient. *See Honeycutt v. Dillard's, Inc.,* 989 F.Supp. 1375, 1377 (D.Kan.1997). Defendants did not present any underlying facts, figures or calculations supporting this statement. Rather, in argument in their response to the motion to remand, defendants present a breakdown of some of the costs of shutting down the loan program (totaling $868,000). The undersigned has not considered this belated "economic analysis" as it is not in the removal notice or submitted by way of

---

5. The Oklahoma punitive damages statute provides in pertinent part:
 B. Category I. Where the jury finds by clear and convincing evidence that:
 1. The defendant has been guilty of reckless disregard for the rights of others; . . . the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:
 a. One Hundred Thousand Dollars ($100,000) or
 b. the amount of the actual damages awarded. . . .
 A. Category II. Where the jury finds by clear and convincing evidence that:

 1. The defendant has acted intentionally and with malice toward others; . . . the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:
 a. Five Hundred Thousand Dollars ($500,000),
 b. twice the amount of actual damages awarded, or
 c. the increased financial benefit derived by the defendant . . . as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.
23 O.S. § 9.1B and C.

attached affidavit thereto.[6] *See Laughlin,* 50 F.3d at 873; *Martin,* 251 F.3d at 1291 n. 4; *Coca–Cola Bottling of Emporia, Inc. v. South Beach Beverage Co., Inc.,* 198 F.Supp.2d 1280, 1283 (D.Kan.2002)("[B]ecause jurisdiction is determined at the time of the notice of removal, the movant must meet its burden in the notice of removal, not in some later pleading.").

Even if defendants had submitted an appropriate and timely affidavit supporting the "economic analysis" of their costs of injunctive relief, such would not provide the proper evaluation of the relief sought. Defendants contend that the Court can rely on either the cost of injunctive relief to defendants or the value of injunctive relief to plaintiffs to determine the amount in controversy, citing *Justice v. Atchison, Topeka & Santa Fe Ry. Co.,* 927 F.2d 503 (10th Cir.1991). Defendants thus urge that the full cost of injunctive relief should be measured from their viewpoint in determining the amount in controversy. However, to do so in this class action would in effect attribute the full cost of injunctive relief to each class member and violate the nonaggregation rule set forth in *Zahn* and *Snyder. See Lonnquist v. J.C. Penney Co.,* 421 F.2d 597, 599 (10th Cir.1970); *Amundson,* 977 F.Supp. at 1124 (well-reasoned discussion of *Justice* in light of the nonaggregation rule); *Harris v. Nationwide Ins. Co.,* 78 F.Supp.2d 1215, 1217 (D.Utah 1999); *McIntire v. Ford Motor Co.,* 142 F.Supp.2d 911, 923–25 (S.D.Ohio 2001). Therefore, even if *Zahn* and *Snyder* allow the cost of injunctive relief to be evaluated from the defendants' perspective, the Court would be required to determine whether the nonaggregation rule applies.

"The threshold question is aggregation, and it must be resolved affirmatively before total detriment can be considered." *Lonnquist,* 421 F.2d at 599. Plaintiff seeks "an injunction prohibiting the Defendants from engaging in the rent a charter scam described herein and barring Defendants from enforcing or collecting on any note or loan agreement within the class period." *Petition* ¶ 42. This asserted right to injunctive relief is based on each class member's individual loan agreement and note and not on a "common and undivided" right the class possessed before the filing of this lawsuit. *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 54 F.Supp.2d 1042, 1051 (D.Kan. 1999). Each class member "could have sued individually to secure the injunctive relief" requested. *Id.* As the class members have separate and distinct claims for injunctive relief, "it would be improper to look to [defendants'] total detriment" in determining the amount in controversy. *Lonnquist,* 421 F.2d at 599. Defendants' full costs of complying with the injunctive relief requested by plaintiff, therefore, cannot be attributed to each class member.

For the reasons set forth above, the undersigned concludes diversity jurisdiction has not been established.

**B. Federal Question Jurisdiction**

Under the well-pleaded complaint rule, an action arises under federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Cisneros v. ABC Rail Corp.,* 217 F.3d 1299, 1302 (10th Cir.2000).

---

**6.** At the November 12, 2003 hearing, defendants acknowledged that EZPawn ceased its relationship with County Bank and has since become licensed by the State of Oklahoma to provide payday loans after Oklahoma enacted new payday lending laws which allow interest rates and transaction terms previously proscribed. Defendants, however, contended that the costs of injunctive relief should be determined at the time of removal which was before EZPawn ceased "servicing" payday loans with County Bank.

Therefore, as "master of the claim," a plaintiff "may prevent removal by choosing not to plead a federal claim even if one is available." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir.1996)(quoting *Caterpillar*, 482 U.S. at 392, 107 S.Ct. 2425). It is undisputed that plaintiff has pled only state law claims in her petition.

▪ There is, however, an "independent corollary" to the well-pleaded complaint rule, the "complete preemption" doctrine, which provides: "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Board of State of Cal.v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Cisneros*, 217 F.3d at 1302. Complete preemption differs from ordinary or conflict preemption:

> Ordinarily, federal preemption is raised as a defense to the allegations in a plaintiff's complaint.... [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue....
>
> There does exist, however, an "independent corollary" to the well-pleaded complaint rule, known as the "complete preemption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a

federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425 (citations omitted). Complete preemption is jurisdictional rather than an affirmative defense to a state law claim. As such, the doctrine allows removal even if the complaint is artfully pled to include only state law claims. *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir.1996) (Complete preemption is "not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.")

In its recent decision in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), the Supreme Court addressed whether state law usury claims against a national bank could be removed to federal court based on complete preemption by the National Bank Act. The Supreme Court recognized two circumstances in which a state claim could be removed to federal court: "[1] when Congress expressly so provides, such as in the Price–Anderson Act ... or [2] when a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* at 2063. The Court found that Sections 85 [7] and 86 [8] of the National

---

**7.** Section 85 of the National Bank Act provides in pertinent part:

> Rate of interest on loans, discounts and purchases
> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or

other evidences of debt, interest at the rate allowed by the law of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank

Bank completely preempted state law usury claims against the defendant national bank, and therefore, removal was appropriate.[9]

In so holding, the *Beneficial* Court determined that Sections 85 and 86 of the National Bank Act provides a federal remedy for loan overcharges:

[Section 85] sets forth the substantive limits on the rates of interest that national banks may charge. [Section 86] sets forth the elements of a usury claim against a national bank, provides for a 2–year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim.

*Id.* at 2063. The Supreme Court then concluded the federal remedy was exclusive based on the Supreme Court's "longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury

against national banks" and "the special nature of federally chartered banks." *Id.* at 2064. The Court reasoned that "[t]he same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the 'power to destroy,' *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 431, 4 L.Ed. 579 (1819), supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction." *Id.* Thus, "[i]n actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.*

Defendants contend plaintiff's state claims are similarly completely preempted by Section 27 of the Depository Institutions Deregulation and Monetary Control Act ("DIDA"), 12 U.S.C. § 1831d, which

---

is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the Revised Statutes. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.
12 U.S.C. § 85.

8. Section 86 provides the remedy for any violation of § 85:

Usurious interest; penalty for taking; limitations

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly

done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of interest thus paid from the association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred.
29 U.S.C. § 86.

9. The Court found the National Bank Act comparable to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 85, and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, which completely preempt state law claims as these statutes provide the "exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial,* 123 S.Ct. at 2062–64.

was patterned after §§ 85 and 86 of the National Bank Act to provide the exclusive remedy for borrowers who have allegedly been overcharged in loan transactions with state-chartered, federally insured banks, such as County Bank.[10] Similar to national banks under § 85, County Bank, as a state-chartered, federally insured depository institution, can charge interest "at the rate allowed by the laws of the State ... where the bank is located." 12 U.S.C. § 1831d(a). As County Bank is chartered by and located in Delaware, Delaware law applies and Delaware does not limit interest rates on loans.[11] Defendants argue that § 1831d of DIDA, like § 85 and 86 of the National Bank Act, "create[s] a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state [usury] law." *Ben-*

*eficial,* 123 S.Ct. at 2064. Therefore, Flower's claims are completely preempted and defendants are entitled to removal.

The question of whether plaintiff's state law claims would be preempted by DIDA if brought against County Bank, however, is not the issue before the Court. No claims have been brought against County Bank in this lawsuit. The state action claims are asserted against EZPawn and EZCorp, neither of which is a state-chartered, federally insured (or national) bank. *See e.g., Colorado ex rel. Salazar v. Ace Cash Express, Inc.,* 188 F.Supp.2d 1282, 1285 (D.Colo.2002)("The Complaint *strictly* is about a non-bank's violation of *state* law. It alleges *no* claims against a *national bank* under the NBA.").

Defendants argue that County Bank is the real lender and Flowers cannot manip-

---

10. Section 27 of the DIDA, 12 U.S.C. § 1831d provides:

(a) Interest rates
In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.
(b) Interest overcharge; forfeiture; interest payment recovery
If the rate prescribed in subsection (a) of this section exceeds the rate such State

bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

11. Under Delaware law, "[a] bank may charge and collect periodic interest in respect of a loan at such daily, weekly, monthly, annual or other periodic percentage rates as the agreement governing, or the bond, note or other evidence of, the loan provides ...." Del.Code.Ann.tit.5 § 963.

ulate around federal jurisdiction by not naming County Bank as a party. Defendants, however, offer no support for their assertion that County Bank is the real lender other than the allegations in the petition:[12]

> Even the Plaintiff acknowledges in her petition that County Bank is involved in the loan transaction, that the loan note she signed states that County Bank is the lender, and that she received a County Bank check as funding for her loan. Defendants submit that County Bank developed the loan product at issue, approved and made the extension of the loan to the Plaintiff and all others similarly situated, funded the loan of the Plaintiff and all others situated, and is thus, even under the Plaintiff's allegations, the maker of the Plaintiff's loan and the loans of all others similarly situated. Therefore, even though the Plaintiff has not joined County Bank as a party Defendant, this case is thus a matter to which the "complete preemption" removal jurisdiction doctrine applies.

*Notice of Removal* ¶ VII. Thus, for purposes of remand, the undersigned must look to plaintiff's allegations to determine whether the petition on its face compels a legal finding that County Bank is the real lender.

The petition alleges the following: EZCorp is a Delaware corporation, headquartered in Austin, Texas which is engaged primarily in the operation and management of 283 pawnshops, including EZPawn, a Delaware corporation doing business in Oklahoma. *Petition* ¶¶ 2–3.

EZPawn lent money in the form of a "payday loan" to Flowers. *Petition* ¶ 9. Although the loan proceeds are paid to borrowers by checks purportedly drawn from County Bank, EZCorp through EZPawn exerts ownership and control over these loans. *Petition* ¶ 13. EZCorp through EZPawn carries out all interaction with the borrowers, accepts the ultimate credit risk, collects and pockets virtually all of the finance charges and fees, and owns and controls the branding of the loans which are available only at its pawnshops. *Id.* EZCorp "is in fact the primary lender, creditor and collector in the payday loans the company makes at usurious interest rates to borrowers in working class and low-income communities across the state." *Id.* These allegations do not support a legal or factual finding that County Bank is the true lender. The petition alleges state law claims against non-bank defendants, EZCorp and EZPawn.

Defendants' reliance on *Beneficial* is misplaced. In *Beneficial*, Beneficial National Bank, a national bank chartered under the National Bank Act, was a named defendant. *Beneficial*, 123 S.Ct. at 2060–61. The question of the National Bank Act's complete pre-emption of state claims against the national bank was squarely at issue from the face of the complaint. *Id.* at 2060 ("The question in this case is whether an action filed in a state court to recover damages from a *national bank* for allegedly charging excessive interest in violation of both "the common law usury doctrine" and an Alabama usury statute may be removed to a federal court because

---

12. Defendants did not provide any evidence in support of their assertion that County Bank is the real lender. The only attachment to defendants' notice of removal is the petition. (Dkt.# 1). The only attachments to defendants' response to the motion to remand are the notice of removal and the Delaware statute on periodic interest. (Dkt.# 15). While defendants did attach purported copies of Flowers' loan application, arbitration agreement, loan and check, all of which identify County Bank, in support of their motion to compel arbitration (Dkt. # 3, Exhibits D, E and F), none of these exhibits was included in the notice of removal or response to the motion to remand.

it actually arises under federal law.")(emphasis added).

Defendants also argue that *Krispin v. May Dep't Stores*, 218 F.3d 919 (8th Cir. 2000) is dispositive of removal. Even if the Tenth Circuit were to adopt the analysis in *Krispin*, the undersigned disagrees. In *Krispin*, the defendant, The May Department Stores Company ("store"), issued credit cards to plaintiffs. The store later entered into an agreement with its wholly-owned subsidiary, May National Bank of Arizona ("bank") which "transferred all authority over the terms and operation" of plaintiffs' credit card accounts to the bank. *Id.* at 922. The store, however, purchased the bank's credit card receivables on a daily basis. *Id.* at 923. Although the bank was not a named defendant, the Eighth Circuit and the district court in *Krispin* concluded that federal jurisdiction was invoked under the National Bank Act because the store had assigned all its contractual rights and duties regarding the credit cards to the bank. *Krispin*, 218 F.3d at 921–24. Both courts so found based on the agreement between the store and the bank which "effected a valid assignment to the bank of whatever contractual rights and duties the store bore toward its pre-existing credit card customers." *Id.* at 924.

While the undersigned questions whether this factual determination based on state law should be made in the first instance by a federal court on removal rather than the state court prior to removal, the Eighth Circuit and the district court decided the issue on a motion for summary judgment, finding there was no genuine issue of material fact that the bank was the real party in interest based on the assignment. *Id.* at 924. Here, the Court has only the petition which, as noted above, alleges throughout that EZCorp through EZPawn is the true lender. Not even the agreement between EZCorp and County Bank is before the Court. As the Court must take the allegations as true for purposes of the motion to remand, the allegations are insufficient for the undersigned to conclude as a matter of law that County Bank and not EZCorp is the true lender. *See Colorado*, 188 F.Supp.2d at 1285. Because the undersigned does not find from the face of the petition that Flowers brings claims against County Bank, the issue of complete preemption is not reached.

Based on the above, the undersigned concludes that defendants have failed to carry their burden to establish the Court's subject matter jurisdiction over this action. Accordingly, the undersigned recommends that plaintiff's motion to remand be GRANTED.

## II Motion to Compel Arbitration

As the undersigned finds the Court lacks subject matter jurisdiction over this case, defendants' motion to compel arbitration is not properly before the Court for decision. The motion is therefore MOOT.

## III. Recommendation

For the reasons set forth herein, the undersigned recommends that Plaintiff's Motion to Remand be GRANTED (Dkt.# 8), which renders Defendants' Motion to Compel Arbitration MOOT. (Dkt.# 5). The undersigned GRANTS Defendants' Motion to Strike Plaintiff's Supplements. (Dkt.# 25).

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this . Report and Recommendation or whether to recommit the matter to the undersigned. As part of his review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to

file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States*, 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir.1996).

November 25, 2003.