**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DANIEL CISNEROS,

      Plaintiff - Appellant,

v.

ABC RAIL CORPORATION, a
corporation organized under the laws
of Delaware doing business in Pueblo,
Colorado; UNITED
STEELWORKERS OF AMERICA
AFL-CIO-CLC, LOCAL UNION NO.
3405,

      Defendants - Appellees.

No. 99-1364

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-WM-825)

---

Margaret Laniak Herdeck, Pueblo, Colorado for the appellant.

William C. Berger of Stettner, Miller and Cohn, P.C., Denver, Colorado, and Angela
Pace, United Steelworkers of America, Pittsburgh, Pennsylvania, (Rudolph L.
Milasich, Jr., United Steelworkers of America, Pittsburgh, Pennsylvania, with them
on the brief), for the appellees.

---

Before **SEYMOUR**, Chief Circuit Judge, **LUCERO**, Circuit Judge and **ELLISON**[*], Chief District Judge.

_____

**LUCERO**, Circuit Judge.

_____

The primary issue presented by this case is whether the exhaustion requirements and limitation periods of Title VII, 42 U.S.C. § 2000e-5(f)(1), and the Colorado Antidiscrimination Act, Colo. Rev. Stat. § 24-34-306(11), (14), apply to an action brought by an employee to enforce a conciliation agreement resolving a prior employment discrimination claim. We must also resolve, as a preliminary matter, whether this Court has subject matter jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We conclude that we have jurisdiction and, under the plain language of the statutes and consistent with their purpose, the exhaustion and limitations periods do not apply.

**I**

In February 1989, Daniel Cisneros and ABC Rail Corporation ("ABC") entered into a conciliation agreement, resolving Cisneros's discrimination claims filed with the Colorado Civil Rights Division ("CCRD"). [1]  The conciliation

_____

[*]  Honorable James O. Ellison, United States District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

[1]  Within the CCRD is the Colorado Civil Rights Commission, which has

(continued...)

agreement, to which the CCRD was a signatory, provided that ABC would restore to Cisneros, "for vacation and pension purposes, a continuous service date to May 29, 1984." (Appellant's App. at 6.) Several years later, Cisneros filed a complaint with the CCRD and Equal Employment Opportunity Commission ("EEOC") alleging that ABC had failed to properly calculate his seniority under the terms of the conciliation agreement and the applicable labor agreement when it denied his request for a vacation day. Both the CCRD and EEOC issued determinations that ABC had not violated the conciliation agreement. The agencies also issued right-to-sue letters to Cisneros. Within ninety days of receiving those letters, Cisneros filed suit against ABC in federal district court, asserting breach of contract and Title VII claims. That suit was later dismissed without prejudice for failure to prosecute.

On March 31, 1999, Cisneros filed suit in the District Court for the County of Pueblo, Colorado, based on the same allegations made in his complaints to the CCRD and EEOC and his subsequent action in federal district court. He styled the new lawsuit as alleging only state law claims for breach of contract and declaratory relief. According to Cisneros, he named the union as a party because

---

[1](...continued)
direct responsibility for enforcement of the relevant provisions of the Colorado Antidiscrimination Act. See Colo. Rev. Stat. §§ 24-34-303, -305. As used in this opinion, the CCRD is synonymous with the Commission.

he believed its rights under the labor agreement between the union and ABC might be affected by the relief sought. Asserting the federal district court would have had original jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, defendants removed the action pursuant to 28 U.S.C. §§ 1331 and 1441 . Cisneros did not move to remand the action to state court. The district court then granted ABC's motion to dismiss the suit as untimely on the ground that it was filed more than ninety days after the issuance of the right-to-sue letters.

## II

In accordance with our duty to satisfy ourselves of this Court's jurisdiction to adjudicate this case, see Tafoya v. United States Dep't of Justice, 748 F.2d 1389, 1390 (10th Cir. 1984), we ordered the parties to submit supplemental briefing on whether federal question jurisdiction is present under either § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3). We conclude that this action arises under § 301 and that we therefore have jurisdiction. Thus, we do not address whether 42 U.S.C. § 2000e-5(f)(3) affords an alternative basis for jurisdiction.

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original

jurisdiction." 28 U.S.C. § 1441(a). Because the parties are not diverse in their citizenship, original jurisdiction is present in this case only if the suit is an "action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint" rule, an action arises under federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)). Thus, as "'master of the claim,'" a plaintiff "may prevent removal by choosing not to plead a federal claim even if one is available." Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996) (quoting Caterpillar, 482 U.S. at 392).

"There does exist, however, an 'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine," Caterpillar, 482 U.S. at 393 (quoting Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 22 (1983)), which provides that "if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," Franchise Tax Board, 463 U.S. at 24. Section 301 of the Labor Management Relations Act is just such a federal cause of action. See Caterpillar, 482 U.S. at 393-94. That section creates federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees

- 5 -

in an industry affecting commerce." 29 U.S.C. § 185(a). The Supreme Court has further elaborated that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, 482 U.S. at 394 (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)) (further citation omitted). Therefore, § 301 preempts "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Saunders v. Amoco Pipeline Co., 927 F.2d 1154, 1155 (10th Cir. 1991) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985)) (further citations omitted).

In determining whether Cisneros's claims in the instant action are "founded directly on rights created by collective-bargaining agreements," or are "substantially dependent on analysis of a collective-bargaining agreement," Caterpillar, 482 U.S. at 394 (internal quotations and citation omitted), we first look to his complaint. However, because "[p]laintiffs often attempt to avoid federal jurisdiction under § 301 by framing their complaints in terms of state law theories," we may "look beyond the allegations of the complaint, often to the petition for removal, to determine whether the wrong complained of arose from a

- 6 -

breach of obligations under the collective bargaining agreement." Albertson's, Inc. v. Carrigan, 982 F.2d 1478, 1480-81 (10th Cir. 1993) (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 530 (10th Cir. 1992); United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. Bechtel Power Corp., 834 F.2d 884, 888 (10th Cir. 1987)).

Cisneros's complaint is just the sort referred to in Albertson's, 982 F.2d at 1480—carefully crafted to conceal its ultimate reliance on a collective bargaining agreement. On their face, the asserted state law claims for breach of contract and declaratory relief are premised exclusively on an alleged violation of the conciliation agreement. When the complaint is viewed in its entirety, however, we cannot escape the conclusion that Cisneros's claims for relief are ultimately founded on an alleged breach of the labor agreement between the union and ABC. He asserts that ABC breached the conciliation agreement by disregarding the provision setting forth his continuous service date. Yet the context in which ABC failed to comply with that provision was the denial of his request for vacation, and from the complaint it appears the only source of Cisneros's right to be awarded vacation based on his continuous service date, i.e., seniority, is the labor agreement.

This conclusion follows from his claim for declaratory relief, which alleges "Defendant through it [sic] actions in 1997 denied Plaintiff his rights granted

under the Conciliation Agreement <u>as defined in the applicable Labor Agreement</u>," based on which plaintiff "prays for a declaration of his rights under the Agreement relating to his vacation rights." (Appellant's App. at 3 (Complaint ¶¶ 23, 24) (emphasis added).) Although the final reference to "the Agreement" obtusely avoids specifying whether it pertains to the conciliation agreement or the labor agreement, we conclude that it refers to the latter. This must be so, given that the conciliation agreement, which Cisneros attached to his complaint, does not confer any vacation rights but rather defines his date of continuous service for purposes of applying independent sources of such rights. The only independent source of vacation rights evident from the complaint is the labor agreement, which the complaint suggests required vacation requests to be awarded based on seniority.[2] Indeed, in the final section of his complaint, Cisneros also seeks a declaration "that his seniority <u>under the Labor Agreement</u> be based [on a continuous service date of May 29, 1984]." (Appellant's App. at 3 (Complaint ¶ 27(1)) (emphasis added).) This prayer for relief strongly

---

 [2] Only an irrelevant portion of the labor agreement concerning the procedure for filling new positions based on seniority is attached to the complaint. As a result, we are compelled to glean the relevant content of that agreement from the face of the complaint. In addition to the labor agreement, the complaint makes a passing reference to a "new vacation rule" instituted by company management, (Appellant's App. at 2 (Complaint ¶ 19)), but there is no suggestion that that rule required vacation to be allotted based on seniority, and thus there is no suggestion that the rule is the source of the rights on which Cisneros's claims rely.

indicates Cisneros's claim is at bottom an allegation that ABC failed to grant a vacation request based on seniority as required by the labor agreement, with the conciliation agreement implicated only to the extent that it defines his seniority.

That conclusion is further bolstered by Cisneros's claim for breach of contract. That claim seeks "[c]ompensation for injuries sustained by Plaintiff as a result of the denial of vacation requests in 1997 and after." (Id. (Complaint ¶ 27(2)).) Again, no such injuries could result from a breach of the conciliation agreement alone because that agreement does not establish a right to vacation or a procedure for handling vacation requests. The only apparent source of those rights is the labor agreement.

Our reading of Cisneros's complaint is also supported by the notice of removal. That pleading asserts that Cisneros's complaint in essence alleges a denial of his rights under the labor agreement, a characterization Cisneros has never challenged. Instead, in his supplemental brief, he continues to cloud, rather than clarify, the nature of his claim: "[T]he instant case does not directly allege an imminent claim for breach of a union contract. Appellant joined the union in his complaint for declaratory relief and breach of contract as a necessary party because his claim implicated the union's rights or interests under the Labor Agreement . . . ." (Appellant's Supp. Br. at 1 (emphasis added).) Cisneros never

indicates a source, other than the labor agreement, of his right to vacation based on seniority.

Because Cisneros's claims are, in essence, claims arising out of the alleged breach of a contract "between an employer and a labor organization representing employees in an industry affecting commerce," 29 U.S.C. § 185(a), Textron Lycoming Reciprocating Engine Division, AVCO Corp. v. UAW, 523 U.S. 653 (1998), does not apply. In that case, the Supreme Court held that § 301 confers federal jurisdiction over suits alleging a labor agreement has been violated but does not confer jurisdiction over suits alleging a labor agreement is invalid. See id. at 657; see also UFCW v. Albertson's, Inc., 207 F.3d 1193, 1195-96 (10th Cir. 2000). Although reference must be made to an outside document—the conciliation agreement—in order to analyze fully ABC's obligations under the labor agreement, the inescapable conclusion is that Cisneros's claims, properly characterized, are "founded directly on rights created by [that] collective-bargaining agreement[]." Caterpillar, 482 U.S. at 394. Therefore, this Court has jurisdiction under § 301.

**III**

"We review de novo the district court's determination that [p]laintiff's claims are barred by the statute of limitations." Sterlin v. Biomune Sys., 154 F.3d 1191, 1194-95 (10th Cir. 1998) (citations omitted). At the outset, we note

the district court and both parties apparently have assumed that the relevant inquiry is whether Title VII, and in particular 42 U.S.C. § 2000e-5(f)(1) (requiring that a civil action be brought within ninety days of receiving a right to sue letter), applies to Cisneros's civil action. It is unclear, however, whether the relevant civil rights statute is Title VII or Part 4 of the Colorado Antidiscrimination Act, Colo. Rev. Stat. § 24-34-401 to -406. Although the conciliation agreement released ABC from all claims filed with the EEOC or CCRD, thus suggesting a Title VII claim, the EEOC was not a party to that agreement, and the present action does not purport to assert a Title VII claim. This ambiguity is ultimately irrelevant, however, because we conclude that neither the exhaustion requirements nor the limitation periods of Title VII, 42 U.S.C. § 2000e-5(f)(1), nor those of the Colorado Antidiscrimination Act, Colo. Rev. Stat. § 24-34-306(11), (14), apply to this action to enforce the terms of a labor agreement as defined by reference to a conciliation agreement. [3]

---

[3] Both statutes provide that, on receiving a complaint, the agency shall conduct an investigation to determine if there is cause to believe the allegations. See 42 U.S.C. § 2000e-5(b); Colo. Rev. Stat. § 24-34-306(2)(a). If reasonable cause is found, the agency must first seek to resolve the complaint through conference, conciliation, or persuasion. See 42 U.S.C. § 2000e-5(b); Colo. Rev. Stat. § 24-34-306(2)(b)(II). The complainant is permitted to bring a civil action only after the agency fails to resolve the complaint within a prescribed time period and issues a right-to-sue letter. See 42 U.S.C. § 2000e-5(f)(1); Colo. Rev. Stat. § 24-34-306(2)(b)(II)(B), -306(11). After receiving the right-to-sue letter, the complainant has ninety days within which to bring an action. See 42 U.S.C.
(continued...)

- 11 -

Several federal appellate courts have addressed, with different results, the applicability of the administrative procedures set forth in 42 U.S.C. § 2000e-5 to an action to enforce a conciliation agreement resolving a Title VII claim and to which the EEOC is a party. In Parsons v. Yellow Freight Systems, Inc., 741 F.2d 871, 874 (6th Cir. 1984), the Sixth Circuit held that "we do not think that the jurisdictional requirements recited above[, i.e., filing a timely complaint with the EEOC and subsequently receiving and acting upon a right-to-sue letter,] can be evaded by a suit designed to enforce a contract under state law where the contract itself is a product of EEOC action and the EEOC is a signatory to the contract." Accord Blank v. Donovan, 780 F.2d 808, 809-10 (9th Cir. 1986). The Eleventh Circuit took a contrary approach in Eatmon v. Bristol Steel & Iron Works, Inc., 769 F.2d 1503, 1510 n.8 (11th Cir. 1985), holding "there is no need for the filing of timely charges [with the EEOC] with regard to the breach of a Title VII conciliation agreement; such agreements can be enforced in federal court in the absence of any charges." The Eatmon court's conclusion followed from a line of

[3](...continued)
§ 2000e-5(f)(1); Colo. Rev. Stat. § 24-34-306(11). The administrative procedures of the Colorado Antidiscrimination Act differ from those of Title VII in two respects: they provide for an administrative hearing if conciliation efforts are unsuccessful, Colo. Rev. Stat. § 24-34-306(4); and they permit a complainant to bring a civil action if the CCRD's jurisdiction terminates for certain defined reasons other than issuance of a right-to-sue letter, Colo. Rev. Stat. § 24-34-306(11). Neither of these distinctions is relevant to our analysis.

cases holding "[t]he EEOC can go directly to court to enforce [conciliation] agreements, as soon as it believes the agreement [sic] has been breached." Id. at 1508 (citing EEOC v. Safeway Stores, Inc., 714 F.2d 567 (5th Cir. 1983); EEOC v. Liberty Trucking Co., 695 F.2d 1038 (7th Cir. 1982)).

Our reading of the language of Title VII, and consideration of the purpose of the administrative procedure it establishes, lead us to agree with the Eleventh Circuit's result. Furthermore, the similar language and purpose of the Colorado Antidiscrimination Act mandate the same result under that statute. Under the plain language of Title VII, its relevant administrative procedures apply only to civil actions involving "a charge filed with the Commission pursuant to subsection (b)," 42 U.S.C. § 2000e-5(f)(1), which subsection refers to charges of "unlawful employment practice[s]," 42 U.S.C. § 2000e-5(b). Similarly, the administrative procedures of the Colorado Antidiscrimination Act apply only to civil actions "based on an alleged discriminatory or unfair practice" prohibited by the statute. Colo. Rev. Stat. § 24-34-306(14); see also Brooke v. Restaurant Servs. Inc., 906 P.2d 66, 70 (Colo. 1995) (holding that administrative exhaustion is required for a claim alleging a violation of the Act, but not for a claim alleging common law sex discrimination). Cisneros alleges the denial of his vacation request was based on a calculation of seniority that conflicted with the terms of the conciliation agreement and labor agreement. His civil action, therefore, is not

based on an alleged discriminatory act; it is based on the alleged breach of those contracts. The contrary distinction—the employee's action involved a discrimination claim, not a breach of contract claim—informed the court's conclusion in Blanks that administrative exhaustion under Title VII was required. 780 F.2d at 809-10. Given the purely contractual nature of Cisneros's claim, administrative exhaustion under Title VII or the Colorado Antidiscrimination Act is not required.

Moreover, requiring Cisneros to adhere to the administrative procedures of Title VII or the Colorado Antidiscrimination Act would do nothing to further the goals of those procedures. It is well established that the primary purpose of Title VII's administrative procedure is to achieve voluntary resolution of employment discrimination disputes. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974) (finding that Congress selected cooperation and voluntary compliance as the preferred means for eliminating discrimination in the workplace); Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997) ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance."). Although neither the Colorado legislature nor the Colorado courts have delineated the purposes of the administrative procedure of the Colorado Antidiscrimination Act,

the similarity of form between the Act's procedure and that of Title VII strongly suggests a similar purpose. It is clear that that purpose would not be furthered by requiring Cisneros to file a complaint with the CCRD or EEOC alleging a breach of the conciliation agreement. [4] The goal of voluntary compliance with Title VII or the Colorado Antidiscrimination Act was met when Cisneros's discrimination claim was resolved by conciliation. What Cisneros now seeks is compliance with that agreement, not with the anti-discrimination laws.

We therefore conclude that Cisneros's claim is not subject to Title VII or the Colorado Antidiscrimination Act's requirements that a complainant can bring a civil action only after exhausting administrative procedures and within ninety-days of receiving a right-to-sue letter. We express no view as to the proper statute of limitations for Cisneros's action, nor as to whether he has satisfied that or any other applicable procedural prerequisite.

## IV

The judgment of the district court is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

---

[4] Actually, Cisneros did file such a claim with the CCRD and EEOC. At issue here is whether those filings were mandatory or discretionary.