**PORT ARTHUR INDEPENDENT SCHOOL DISTRICT,**
Appellant,

v.

**Paula MATHEWS, Appellee.**

No. 09–07–162 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 4, 2007.

Decided Jan. 31, 2008.

Richard Morris, Holly Roberts Narcisse, Feldman & Rogers, L.L.P., Houston, for appellant.

David Bernsen, Law Office of David E. Bernsen, P.C., Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In this appeal from the denial of a plea to the jurisdiction, Port Arthur Independent School District ("PAISD") contends Paula Mathews failed to exhaust her administrative remedies before filing suit for breach of an Equal Employment Opportunity Commission ("EEOC") settlement agreement and for retaliation under the Texas Commission on Human Rights Act. *See* 42 U.S.C. § 2000e et seq.; TEX. LAB. CODE ANN. § 21.001 et seq. (Vernon 2006).[1] Mathews contends she did not have to exhaust her administrative remedies before filing suit because her claims grew out of an earlier charge of discrimination. The parties voluntarily mediated Mathews's earlier age and race discrimination claims and executed a settlement agreement before any EEOC determination was made. There was no pending claim of discrimination before the trial court when the retaliation claim arose, and Mathews did not file an administrative charge of retaliation or complain to the administrative agency regarding the alleged breach. We hold the trial court erred when it denied the school district's plea to the jurisdiction. Accordingly, we reverse the trial court's order and dismiss the cause.

Mathews filed a Title VII age and race discrimination complaint with the EEOC in October 2004. In March 2005, the parties executed a mediation conciliation agreement in which PAISD agreed to pay Mathews $35,500. The agreement constituted a request for closure of the charge. PAISD also agreed "that there shall be no discrimination or retaliation of any kind against Paula as a result of filing this charge. . . ." The parties agreed that "the EEOC is authorized to investigate compliance with this agreement" and that the agreement could be "specifically enforced in court by the EEOC or the parties and may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged." PAISD agreed to provide Mathews a letter of recommendation. Although PAISD did not agree to rehire Mathews, the agreement stated that "Paula is encouraged by Port Arthur ISD to apply for any opening in her qualifications and, within the norms of the school Principal having hiring authority, [PAISD] will support her application." In April 2005,

---

1. Throughout this opinion, suits filed under these statutes are referred to as Title VII or CHRA claims.

the EEOC joined the settlement, agreed to "terminate its investigation and to not use the above referenced charge as a jurisdictional basis for a civil action. . . ."

In a petition filed in January 2006, Mathews sued the school district for breach of contract and retaliation. Mathews alleged PAISD breached the settlement agreement by failing to hire her for positions available after April 2005 for which she was the most qualified. Mathews alleged the positions were intentionally and purposefully filled with less-qualified individuals. Mathews also alleged that the principals of the schools have not supported her application for openings in her qualifications. Mathews alleged PAISD retaliated against her.

The school district's plea to the jurisdiction alleged the trial court lacked jurisdiction over Mathews's claims because Mathews failed to submit her retaliation claim to either the EEOC or the Texas Workforce Commission. In response, Mathews contended that the settlement completed the administrative process. She argued that the trial court had jurisdiction over her claims relating to the school district's breach of the settlement agreement, and that the retaliation claim was ancillary to her claims regarding breach of the settlement agreement. The trial court denied the plea to the jurisdiction, and PAISD appealed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2007).

■ PAISD contends the trial court erred in determining that Mathews was not required to exhaust the administrative remedies provided by Title VII before asserting her claims against PAISD for breach of contract and retaliation. Generally, exhaustion of administrative remedies is a prerequisite to bringing a civil action under Title VII or the CHRA. *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 487 (Tex.1991). Some courts have construed

Title VII to not require an employee to bring a retaliation claim to the EEOC if the retaliation occurs while the trial court has jurisdiction of the underlying discrimination claim. *See Carter v. South Cent. Bell,* 912 F.2d 832, 841 (5th Cir.1990); *Gottlieb v. Tulane Univ. of La.,* 809 F.2d 278, 284 (5th Cir.1987); *Gupta v. East Tex. State Univ.,* 654 F.2d 411, 414 (5th Cir. 1981); *Elgaghil v. Tarrant County Junior Coll.,* 45 S.W.3d 133, 142 (Tex.App.-Fort Worth 2000, pet. denied).

One case relied upon by Mathews excused the administrative exhaustion requirement for the retaliation claim even though the trial court lacked jurisdiction over the underlying discrimination claim that had been filed with the EEOC more than thirty days after the violation occurred. *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir.1992). On the other hand, the Texarkana Court of Appeals declined to create an exception to the exhaustion of administrative remedies, notwithstanding the "direct relationship between the exhaustion of administrative remedies under the discrimination charges and the retaliation." *Davis v. Educ. Serv. Ctr.,* 62 S.W.3d 890, 894 (Tex.App.-Texarkana 2001, no pet.). In *Davis,* the court noted that Section 21.055 of the Labor Code, which states that retaliation is an independent violation of the Texas CHRA, does not create a retaliation exception to the exhaustion requirement. *Id.*

■ The other cases cited by the parties are largely decided based upon the status of the underlying discrimination claim at the time the retaliation occurs. Typically, unexhausted retaliation claims must be ancillary to a properly exhausted and timely filed discrimination claim. *See Fine v. GAF Chem. Corp.,* 995 F.2d 576, 577 (5th Cir.1993) (allegedly retaliatory act occurred before employee filed complaint with EEOC); *Barrow v. New Orleans*

*Steamship Ass'n,* 932 F.2d 473, 479 (5th Cir.1991); *see also City of Midland v. O'Bryant,* 18 S.W.3d 209, 216 (Tex.2000).[2] Most cases that held the employee need not file a retaliation complaint with the administrative body to pursue the underlying claim concerned situations in which the retaliation occurred after suit had been filed on a properly-exhausted discrimination claim. *See, e.g., Carter,* 912 F.2d at 836; *Gottlieb,* 809 F.2d at 283–84; *Gupta,* 654 F.2d at 413; *Elgaghil,* 45 S.W.3d at 137–38; *see also Clockedile v. New Hampshire Dep't of Corr.,* 245 F.3d 1, 5 (1st Cir.2001) (retaliation occurred after right-to-sue letter issued and shortly before employee filed suit). The alleged act of retaliation in *Nealon* apparently occurred while the case was before the EEOC. *Nealon,* 958 F.2d at 587. In a later decision, the Fourth Circuit distinguished allegations of retaliation occurring while the case is before the EEOC from retaliation occurring after the underlying discrimination charge settled. *Brown v. Runyon,* No. 96–2230, 1998 WL 85414 at \*4, 1998 U.S.App. LEXIS 3237 at \*11 (4th Cir. Feb. 27, 1998). When PAISD allegedly retaliated against Mathews, no proceedings were active before any agency or court. In her case, filing a retaliation complaint with the EEOC would not have been a futile and redundant exercise; to the contrary, Mathews received relief on her initial complaint, and the settlement agreement specified that the EEOC did not waive or limit its right to investigate or seek relief on any other charge. We conclude that the trial court could not exercise jurisdiction over an unexhausted claim solely because Mathews asserted retaliation.

Mathews also argues that she is not required to exhaust her administrative remedies before asserting a claim for breach of contract. PAISD argues that the breach of an EEOC conciliation agreement, particularly where the alleged breach constitutes an act of discrimination or retaliation, is an action arising under Title VII that must be presented in an administrative charge before the court may exercise jurisdiction. The parties identify a split in the federal circuits and assert that this is apparently an issue of first impression in Texas.

The Sixth and Ninth Circuits have held that a suit to enforce a Title VII settlement agreement is an action under Title VII and that the plaintiff must file an administrative charge with the EEOC prior to filing a suit for breach. *See Blank v. Donovan,* 780 F.2d 808 (9th Cir.1986); *Parsons v. Yellow Freight Sys., Inc.,* 741 F.2d 871 (6th Cir.1984). In *Blank,* a federal employee mediated a retaliatory discrimination settlement agreement that stated he would receive equal treatment with other Department employees. *Blank,* 780 F.2d at 809. Passed over for promotion four years later, the employee filed a breach of contract suit. *Id.* Because the agreement stemmed from a negotiated settlement of an employee discrimination complaint and an EEOC complaint had not been filed as to the present complaint, the court held the employee could not bypass the Title VII requirements by proceeding directly to the district court on a breach of contract theory. *Id.* at 809–10.

In *Parsons,* the employer agreed to hire the employee in settlement of a sexual discrimination charge filed with the EEOC. *Parsons,* 741 F.2d at 872. Shortly thereafter, the employer fired the employ-

---

**2.** Because the employees in *O'Bryant* did not challenge the intermediate appellate court's holding that the trial court lacked jurisdiction because the employees failed to exhaust their administrative remedies, the Supreme Court did not directly consider whether exhaustion applies to a retaliation claim. *O'Bryant,* 18 S.W.3d at 216.

ee, allegedly for poor performance, and the employee sued. *Id.* at 872. The employee neither applied for an EEOC right-to-sue letter nor invoked the EEOC's conciliation of the dispute over her discharge. *Id.* at 874. Holding the exhaustion of administrative remedies requirement had not been met, the court noted that the jurisdictional requirements could not be "evaded by a suit designed to enforce a contract under state law where the contract itself is a product of EEOC action and the EEOC is a signatory to the contract." *Id.*

The Tenth and Eleventh Circuits have held that Title VII conciliation agreements may be enforced without filing charges with the EEOC. *Hinderman v. Peters,* 17 Fed.Appx. 853 (10th Cir.2001); *Cisneros v. ABC Rail Corp.,* 217 F.3d 1299 (10th Cir. 2000); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503 (11th Cir.1985). In *Cisneros,* the Tenth Circuit based federal jurisdiction on the Labor Management Relations Act, not Title VII. *Cisneros,* 217 F.3d at 1302. The court held that the claim was not subject to Title VII's time-of-filing and administrative exhaustion requirements. *Id.* at 1306. The Tenth Circuit distinguished *Blank,* in which the employee's action involved a discriminatory act, from Cisneros's claim, which alleged the denial of his vacation request was based on a calculation of seniority that conflicted with the terms of the conciliation agreement and the labor agreement. *Id.* at 1305. The court held that exhaustion was not required because the employee's claim was "purely contractual." *Id.*

In *Hinderman,* a civilian employed by the United States Air Force as a clerk at Tinker Air Force Base filed a Title VII suit after she was laid off during a reduction in force. *Hinderman,* 17 Fed.Appx. at 853. That suit terminated with an agreement to reinstate the employee. *Id.* When the employee was again terminated

nine months later, the employee notified the director of the appellate review organization that the settlement agreement had been breached. *Id.* The director instructed the employee to file a new complaint with the EEOC counselor, but the employee filed suit instead. *Id.* The appellate court remanded the case for the trial court to determine whether the employee was alleging new claims of discrimination or simply attempting to reinstate her previous discrimination claims. *Id.* at 854. In its opinion, the court noted that whether Title VII provides a jurisdictional basis in cases alleging only breach of a Title VII settlement agreement remained an open question after *Cisneros. Id.*

In *Eatmon,* a conciliation agreement between the employer and the EEOC identified fifteen employee-plaintiffs as members of an affected class suffering unlawful discrimination. *Eatmon,* 769 F.2d at 1505. As part of the implementation of the agreement, the employer contacted the appellees, hired fourteen of them, and obtained releases of claims regarding employment discrimination relating to the delay in their employment. *Id.* at 1506. Although the employer paid back pay as required by the conciliation agreement, the employer reduced the payment by the amount of earnings received during the period at issue. *Id.* Subsequently, the employees were laid off based upon the date of actual hire. *Id.* The employees filed charges with the EEOC and obtained right-to-sue letters before filing suit. *Id.* The employer challenged jurisdiction on grounds that the employees filed suit more than 180 days after the alleged discriminatory acts. *Id.* at 1507. The appellate court held there was federal subject matter jurisdiction of the claims which sought enforcement of the releases and the EEOC conciliation agreement. *Id.* at 1508. Noting that the EEOC may go directly to court to enforce a Title VII

agreement as soon as it believes the agreement has been breached without administrative remedies having been exhausted, the court reasoned that because the releases were themselves Title VII conciliation agreements, the exhaustion and limitations requirements did not apply. *Id.* Although the EEOC never conducted any investigation and did not determine reasonable cause or participate in the creation of the releases, the court reasoned that permitting the agreements to be enforced in federal court under Title VII furthered the congressional goal of conciliation and voluntary compliance with Title VII. *Id.* at 1510, 1512. The court considered that failure to permit enforcement in federal court might encourage employers to abide by an agreement only until the deadline for filing charges with the EEOC passed, then breach the agreement after it was too late to file charges for the underlying discriminatory act. *Id.* at 1513.

Mathews contends we should follow the Tenth and Eleventh Circuits because the opinions from those courts relied on a precedent from the Fifth Circuit. *See EEOC v. Safeway Stores, Inc.,* 714 F.2d 567, 575 (5th Cir.1983). In *Safeway,* the EEOC filed suit against the employer for specific enforcement of a conciliation agreement. *Id.* at 570. The appellate court rejected the employer's argument that the federal court lacked jurisdiction because the applicable statute authorized the EEOC to sue when it was unable to secure a conciliation from the employer but did not expressly authorize the EEOC to sue on a contract. *Id.* at 571. In concluding that the EEOC has the authority to seek enforcement of conciliation agreements in federal court, the court reasoned that Congress created an administrative structure whereby the EEOC would have an opportunity to settle disputes before the aggrieved party would be permitted to file a lawsuit and that the EEOC was expressly prohibited from commencing legal action until it had attempted to negotiate voluntary compliance. *Id.* at 572. This analysis does not lend support to the appellee's position that the aggrieved party may circumvent the administrative process and proceed directly to an enforcement action in state court.

Mathews alleged PAISD violated the settlement agreement by retaliating against her, presumably by hiring less-qualified individuals for positions Mathews applied for after she settled her discrimination claims through the EEOC. As was the case in *Blank,* this new action by PAISD would be actionable as a retaliatory or discriminatory act regardless of the existence of a conciliation agreement. *See Blank,* 780 F.2d at 809–10. As was the case in *Parsons,* the contract to be enforced was a Title VII conciliation agreement to which the EEOC was a signatory. *Parsons,* 741 F.2d at 872. *Eatmon* and *Cisneros* held that exhaustion of administrative remedies was not required for an action to enforce a settlement agreement, but they relied on *Safeway. Cisneros,* 217 F.3d at 1305; *Eatmon,* 769 F.2d at 1508. Under *Safeway,* when the EEOC is involved in a settlement, it may proceed to enforcement without further action on the part of the employee. *Safeway,* 714 F.2d at 573–74. *Safeway* does not inform us of the procedures an employee must follow to obtain enforcement of the settlement agreement. The settlement agreement between Mathews and PAISD certainly anticipated further involvement by the EEOC in the event PAISD engaged in a retaliatory act, as the agreement stated that "[t]he parties agree that the EEOC is authorized to investigate compliance with this agreement and that this agreement may be specifically enforced in court by the EEOC or the parties and may be used

as evidence in a subsequent proceeding in which a breach of this agreement is alleged." Furthermore, there is no compelling reason to ignore the statutorily-required exhaustion of remedies. Mathews resolved her initial complaint through the conciliation process. If PAISD breached the agreement, Mathews could complain to the EEOC and either obtain a right-to-sue letter or the EEOC could act to enforce the agreement itself. Likewise, if PAISD committed a new act of retaliation, Mathews could complain to the EEOC. Either way, PAISD could not exploit its earlier conciliation to Mathews's detriment. We hold Mathews's claims are subject to the statutory prerequisites for filing suit on claims subject to administrative procedures.

No administrative complaint has been filed with respect to the dispute before the trial court. We hold the trial court erred when it denied the school district's plea to the jurisdiction. Accordingly, we reverse the trial court's order and dismiss the cause.

REVERSED; CAUSE DISMISSED.