**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MINA ORTEGA,

     Plaintiff - Appellant,

v.

NEW MEXICO LEGAL AID, INC.; ED
MARKS, individually and as Director of
New Mexico Legal Aid, Inc.; SIEMPRE
UNIDOS EN PROGRESO, a Unit of
National Organization of Legal Services
Workers ("NOLSW")/UAW LOCAL 2320
INTERNATIONAL UNITED AUTO
WORKERS, AFL-CIO; DONIS BORKS,
individually and as Union Organizer;
ALICIA CLARK, individually and as
Grievance Chair for Siempre Unidos en
Progreso,

     Defendants - Appellees.

No. 15-2098
(D.C. No. 1:14-CV-00628-MCA-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mina Ortega appeals from the district court's Fed. R. Civ. P. 12(b)(6) dismissal of her breach-of-contract suit for failure to exhaust the grievance procedure in the collective bargaining agreement (CBA) underlying her claims. She also appeals from the denial of her motion to remand to state court. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## *Background*

Ms. Ortega worked as a staff attorney at New Mexico Legal Aid, Inc. (the Employer) from October 2008 until the Executive Director discharged her for gross misconduct in January 2014. She was a member of the bargaining unit represented by Siempre Unidos en Progreso, a Unit of National Organization of Legal Services Workers (NOLSW)/UAW Local 2320 International United Auto Workers, AFL-CIO (the Union). The Employer and the Union are parties to a CBA.

The CBA provides that disciplinary decisions are subject to a grievance procedure. Section 6.9 of the CBA states that grievances "shall" proceed according to a five-step grievance procedure, which starts at Step 2 (a formal written grievance) for a discharge. The next step is a formal written appeal to the Executive Director. If the grievance remains unresolved, the Union and the Employer may then mutually agree to mediation. But if they decline to mediate and the Union wishes to pursue the grievance, the parties must proceed to binding arbitration.[1]

---

[1] In § 5.7c, part of the "gross misconduct" section, the CBA provides for an immediate resort to mediation with regard to a discharge decision by the Executive Director. Before this court, the Employer appears to have abandoned its earlier position that § 5.7c provides the only process to challenge Ms. Ortega's discharge.

2

The Union filed a grievance protesting Ms. Ortega's discharge. But Ms. Ortega was not convinced she was required to use the grievance process, because § 6.2c of the CBA, also in the grievance section, provides that "[n]othing contained herein shall limit or otherwise exclude any grievant from seeking redress from any government agency, regulatory body or court of law." R. at 407. Further, she was not satisfied with the Union's representation. Particularly, the Union rejected a limited release of information she had drafted, and instead required Ms. Ortega to sign an unrestricted release permitting the Union complete access to Ms. Ortega's employment file under threat of dropping the grievance. And when the process reached Step 4, the Employer and the Union scheduled the mediation on a day when she was not available.

Just before the scheduled mediation, Ms. Ortega filed a lawsuit against the Employer and the Union in New Mexico state court.[2] She alleged that the Employer had wrongfully terminated her employment and breached the CBA, and she sought a declaratory judgment as to the Employer's and the Union's actions during the grievance proceedings. She also filed a motion to stay the mediation. The Employer and the Union suspended the mediation pending the suit.

The Employer, with the Union's consent, removed the suit to federal court. Ms. Ortega filed an amended complaint, reiterating her claims against the Employer

Ultimately, however, it is immaterial to this appeal which grievance procedure applies; both involve mediation, which was not completed in this case.

[2] The suit also named certain individuals as defendants, but because their presence does not affect the resolution of this appeal, for ease of discussion we focus on the Employer and the Union.

and adding a claim that the Union breached its duty of fair representation. She also filed a motion to remand the case to state court. Both the Employer and the Union moved to dismiss under Rule 12(b)(6), which Ms. Ortega opposed. The district court accepted the defendants' arguments that Ms. Ortega's state-law claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that she was required to exhaust the grievance procedure in the CBA before proceeding in court. It granted the Rule 12(b)(6) motions, denied the motion to remand, and denied the motion to stay the mediation.

Ms. Ortega filed a timely Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, which the district court also denied. Ms. Ortega then filed a timely notice of appeal.

### *Discussion*

On appeal, Ms. Ortega challenges the denial of her motion to remand and the Rule 12(b)(6) dismissal of her amended complaint. We review both of these issues de novo. *Garley v. Sandia Corp.*, 236 F.3d 1200, 1206-07 (10th Cir. 2001).

### I.  Motion to Remand

For purposes of remand, the relevant pleading is the complaint in effect at the time of removal. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1133 (10th Cir. 2014). Here that was the original complaint, in which Ms. Ortega pleaded that the Employer terminated her employment in violation of the CBA.

"Section 301 of the Labor Management Relations Act . . . provides for suits in the district courts for violation of collective-bargaining contracts between labor

4

organizations and employers without regard to the amount in controversy." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561 (1976). "Section 301 contemplates suits by and against individual employees as well as between unions and employers; and . . . § 301 suits encompass those seeking to vindicate uniquely personal rights of employees such as . . . wrongful discharge." *Id.* at 562 (internal quotation marks omitted). It is well established that, by virtue of the complete pre-emption doctrine, claims alleging a breach of a CBA are considered to arise under § 301 even if they ostensibly are pleaded as state-law claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (holding pre-empted "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement" (internal quotation marks omitted)); *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1304 (10th Cir. 2000) (recognizing that claims pleaded under state law were "properly characterized" as "founded directly on rights created by [a] collective-bargaining agreement," creating jurisdiction under § 301 (brackets and internal quotation marks omitted)).

Under 28 U.S.C. § 1441(a), a defendant may remove to the district court any civil action over which the district court has original jurisdiction, which includes all civil actions arising under federal law, *see id.* § 1331. Because Ms. Ortega's claims against the Employer alleged a violation of the CBA and therefore are considered to arise under § 301, the defendants had the option to remove this suit to federal court. *See Caterpillar*, 482 U.S. at 399 ("When a plaintiff invokes a right created by a

5

collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.").

Ms. Ortega argues that § 6.2c of the CBA provides that she may proceed in any court, and she refers to language from *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 657-58 (1965), indicating that a state-court suit may proceed if a CBA does not contain an exclusive grievance procedure. These arguments are misplaced. Even assuming Ms. Ortega properly filed her lawsuit in state court without exhausting the CBA's grievance procedure (a proposition that we reject below), nothing in the CBA or *Maddox* requires that the suit remain in state court, notwithstanding defendants' federal statutory right to remove.

Ms. Ortega also argues that hybrid actions (suits combining a § 301 claim against an employer and a breach of duty of fair representation (DFR) claim against a union) are not pre-empted. This contention is irrelevant because Ms. Ortega did not plead a DFR claim in her original complaint, which is the operative pleading for purposes of removability. But in any event, it appears that Ms. Ortega is confusing the doctrines of (1) complete pre-emption of state law by federal law and (2) pre-emption of judicial jurisdiction where a claim is within the jurisdiction of the National Labor Relations Board. In *Vaca v. Sipes*, upon which she relies, the Supreme Court confirmed that the courts retain jurisdiction over a hybrid suit. 386 U.S. 171, 186-87 (1967). The Court did *not* hold that a hybrid action cannot be removed from state court to federal court. *Vaca*, in fact, recognized that in a hybrid

6

suit, the claims against an employer remain § 301 claims. *See id.* at 187. And as discussed, § 301 claims create federal jurisdiction.

## II. Motion to Dismiss

"[Section] 301 expresses a federal policy that the substantive law to apply in § 301 cases is federal law, which the courts must fashion from the policy of our national labor laws." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (internal quotation marks omitted). "[I]ssues raised in suits of a kind covered by § 301 are to be decided according to the precepts of federal labor policy." *Id.* (brackets and internal quotation marks omitted).

The Supreme Court has explained that a CBA "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate" and "an effort to erect a system of industrial self-government." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 580 (1960). CBAs commonly contain grievance procedures, which the Court has emphasized are "[a] major factor in achieving industrial peace" and lie "at the very heart of the system of industrial self-government." *Id.* at 578, 581.

In *Republic Steel Corp. v. Maddox*, the Supreme Court recognized that in the labor context, "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant." 379 U.S. at 653. Accordingly, *Maddox* held:

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed

7

upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf.

*Id.* at 652-53 (footnotes and citations omitted).

*Maddox*, however, also held that "[t]he federal rule would not of course preclude [a] court suit if the parties to the collective bargaining agreement expressly agreed that arbitration was not the exclusive remedy." *Id.* at 657-58. In this regard, the language must "reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure . . . in favor of a judicial suit. Any doubts must be resolved against such an interpretation." *Id.* at 658-59.

Pointing to § 6.2c of the CBA—"[n]othing contained herein shall limit or otherwise exclude any grievant from seeking redress from any government agency, regulatory body or court of law"—Ms. Ortega argues that the exhaustion requirement is inapplicable because the parties have expressly agreed that the grievance procedure was not her exclusive remedy. The Union counters that § 6.2c is not intended to provide an alternative remedy for grieveable claims such as wrongful discharge; instead, it is intended to preserve an employee's right to bring suit on claims that do not arise under the CBA, such as discrimination claims. *Cf. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009) (requiring arbitration of a discrimination claim expressly made subject to a grievance procedure). The Employer primarily relies on *Maddox*'s requirement of an express agreement that particular matters are not subject

8

to the grievance procedure and directive that doubts must be resolved in favor of the grievance procedure. *See Maddox*, 379 U.S. at 657-59.

Ms. Ortega's claim for wrongful discharge lies squarely within those matters that are "the business of certified or recognized bargaining agents." *Hines*, 424 U.S. at 563. And we cannot read § 6.2c in insolation. *See Warrior & Gulf Navigation Co.*, 363 U.S. at 579 ("There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties." (internal quotation marks omitted)). Read as part of the entirety of Articles 5 and 6 of the CBA and against the backdrop of well-established principles of federal labor law, *at best* § 6.2c *may* create some doubt about the reach of the CBA's grievance procedure. But as the Employer urges, if a court has "[a]ny doubts" about whether a dispute is subject to the grievance procedure, those "doubts must be resolved against such an interpretation." *Maddox*, 379 U.S. at 659; *see also Warrior & Gulf Navigation Co.*, 363 U.S. at 582-85 (narrowly construing exception to grievance procedure and stating that "[d]oubts should be resolved in favor of coverage"). We therefore conclude that § 6.2c does not allow Ms. Ortega to proceed directly to court with her wrongful-discharge and breach-of-contract claims without exhausting the CBA's grievance procedure.

Ms. Ortega alternatively argues that she satisfies an exception to *Maddox*'s exhaustion requirement because the union has breached its duty of fair representation. In the event of such a breach, an employee will not be compelled to

9

exhaust an otherwise applicable grievance procedure. *See Vaca*, 386 U.S. at 185. As this court has stated:

> If the union is fairly representing the employee, the employee's interests are adequately protected. As the 'fairness' of the union's representation decreases, however, so does the employee's protection and the justification for the exhaustion bar. Thus, if the union refuses to press or only perfunctorily presses the individual's claim, or otherwise acts arbitrarily, discriminatorily, or in bad faith, then the union has breached its duty of fair representation and the employee is entitled to sue under section 301.

*United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 945 (10th Cir. 1989) (citations and internal quotation marks omitted).

To establish that the Union breached its duty of fair representation, Ms. Ortega must prove "[s]ome conduct by the worker's union that breached the duty of fair representation" and "[a] causal connection showing that the union's breach affected the integrity of the arbitration process." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998). Ms. Ortega complains that the Union "is just going through the motions" and "only perfunctorily pressing [her] claim," Aplt. Br. at 18, which may qualify as a breach, *see Webb*, 155 F.3d at 1239-40.

But equally important is that the breach must seriously undermine the integrity of the grievance process. *See Hines*, 424 U.S. at 567; *Webb*, 155 F.3d at 1242. As the district court recognized, at this point Ms. Ortega cannot show this element. "[W]hen a union represents an employee throughout a grievance procedure, a claim challenging the adequacy of that union's representation normally does not accrue until the dispute resolution process has been completely exhausted." *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir. 1990) (per curiam). The

10

Union and the Employer were in the midst of the grievance process when Ms. Ortega's suit interrupted it. Ms. Ortega cannot complain that the Union "seriously undermined" the uncompleted mediation or some future arbitration, as the results are not yet known. Her fears about how the Union *might* act (or not act) during the grievance proceeding are insufficient to proceed with a hybrid suit based on a DFR claim against the Union at this time.

### *Conclusion*

The district court did not err in denying the motion to remand or in granting the motions to dismiss under Rule 12(b)(6). The judgment is affirmed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

11